SIMEON SMITH, as Executor, etc., Respondent, *v.* WILLIAM D. BURCH, Appellant.

In 1877, M., plaintiff's testatrix, made her will, which contained this clause: "I further give and bequeath to my beloved husband all the ready money I may have, either in bank or elsewhere, at my decease." In 1879 she gave to defendant, her husband, authority to collect a legacy due to her, which he collected during the year 1880. From January 1st of that year up to her death, which occurred in September, 1881, the testatrix was of unsound mind and incompetent to transact business. The money so collected was used by defendant with his own money in defraying household expenses and in procuring nurses and medical attendance for his wife, and none of it remained at her death. Defendant was able to provide suitably for his family out of his own property. In an action to recover the amount so collected, *held*, that under said clause of the will, defendant was entitled to retain the same; that when collected it could properly be treated as "ready money;" it remained in his hands as such, liable to be paid on demand, he holding it simply as a depositary, and he used it subject to this liability.

The authorities as to what is included in the word "money," as used in wills, collated.

*Smith* v. *Burch* (28 Hun, 331), reversed.

(Argued March 26, 1883; decided April 17, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of plaintiff, entered upon an order made December 16, 1882, which directed such judgment upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 28 Hun, 331.)

The facts stated in the case submitted are substantially set forth in the opinion.

*George B. Davis* for appellant. Defendant, after receiving the legacy due his wife, by not paying it over to her, became the depositary of the fund, and stands in the position of a banker. (Story on Agency, 206; *Cowling* v. *Cowling*, 26 Beav. 449; *Stoll* v. *King*, 8 How. 298; *U. S.* v. *Inhabitants*,

*etc.*, Davis, 154; *Giepp's Appeal*, 15 Penn. St. 428; *Parley* v. *County of Muskegan*, 20 Am. Rep. 645 ; 17 Wend. 94; 20 N. Y. 76; 6 id. 412; 1 Paige, 249; 6 Hill, 297; 5 Denio, 555.) Money deposited in a bank would pass on a bequest of "money," and this account and demand for money against the defendant presents all the advantageous features of such a claim against a banker for a deposit, and therefore comes under the same rule being a deposit elsewhere. (2 Redfield's Law of Wills, 128; *Gorden* v. *Dortrell*, 1 Mylne and Keen, 56; *Low* v. *Thomas*, 5 DeG., M. & G. 315 ; *S. C.*, Kay, 369; Redfield on Wills, 112, note; Wigram on Wills, 69, 70, 71; *Roberts* v. *Kuffin*, 2 Aiken, 113 ; *Dobney* v. *Cottrell*, 9 Gratt. 572; *Chapman* v. *Reynolds*, 6 Jur. [N. S.] 440 ; *Morton* v. *Perry*, 1 Metc. 446; *In the Matter of the Estate of Miller*, 48 Cal. 165; *Fryer* v. *Rankin*, 11 Sim. 55 ; 2 Redfield on Law of Wills, 128, 438; *Pilkington's Trust*, 6 N. R. 246.)

*William Hazlitt Smith* for respondent. The word "money," even if it stood alone in the will without any of the qualifying words, would not give the defendant the Stevenson legacy. (*Mann* v. *Mann*, 1 Johns. Ch. 231; *S. C.* affirmed, 14 id. 1; 2 Jarman on Wills [Randolph & Talcott's notes], 373 and note ; *Williams* v. *Williams* [1876], 8 Ch. Div. 789; *Manning* v. *Purcell* [1855], 56 Eng. Ch. [7 DeG., M. & G.] 55; *Bysom* v. *Brandreth* [1873], L. R., 16 Eq. 475; *In re Mason's Will*, 34 Beav. 494; *Low* v. *Thomas* [1854], 54 Eng. Ch. [5 DeG., M. & G.] 315 ; *S. C.* below, Kay, 369 ; *Mann* v. *Mann*, 1 Johns. Ch. 231 [same affirmed, 14 Johns. 1] ; 2 Jarman on Wills, 373 ; *Williams* v. *Williams*, 8 Ch. Div. 789; *Manning* v. *Purcell* [1855], 56 Eng. Ch. [7 DeG., M. & G.] 55 ; *Bysom* v. *Brandreth* [1873], L. R., 16 Eq. 475; *Re Mason's Will*, 34 Beav. 494; *Low* v. *Thomas* [1854], 54 Eng. Ch. [5 DeG., M. & G.] 315.) The word "money" has only been given a more extended meaning where the terms of the will itself required it, and especially when used in a residuary clause : as courts will so construe a will as to avoid intestacy if possible. (*Morton* v. *Perry* [1840], 1 Metc. 446 ; *Rogers* v. *Thomas*, 2 Keen, 8 ; Jarman on

Wills [R. & T.'s notes], 375, *et seq.*)   The qualifying words
"ready and in bank or elsewhere" are words of limitation and
locality, and do not extend in the least the strict and ordinary
meaning of the word. (*Stein* v. *Ritherdon*, 37 L. J. Ch. 369;
*Parker* v. *Merchant* [1843], 19 Eng Ch. [1 Phillips] 355; *S. C.*,
1 Youngs and Collyer, 290; *Collins* v. *Collins*, 40 L. J. Ch. 541;
*Freyer* v. *Rankin* [1840], 34 Eng. Ch. [11 Sim.] 55; *Vaisey*
v. *Reynolds* [1828], 5 Eng. Ch. [5 Russell] 12; *Stein* v. *Rith-
erdon*, 37 L. J. Ch. 369; *Parker* v. *Marchant* [1843], 1
Youngs and Collyer [N. S.], 290; 19 Eng. Ch. [1 Phillips] 365;
49 id. 355; *Collins* v. *Collins*, 49 L. J. Ch. 541; *Vaisey*
v. *Reynolds*, 5 Eng. Ch. [5 Russell] 12; *Fryer* v. *Rankin*, 34
id [11 Simons] 55.)   The word "bequest" must be construed
from the terms of the will itself, there being facts in the case
as to the amount, character and kind of property left by the
testatrix.   (Code, § 1281; *Feasing* v. *Irwin*, 55 N. Y. 486,
489; *Van Alstyne* v. *Van Alstyne*, 28 id. 375, 378.)

EARL, J.   In December, 1877, Margery Burch, the wife of
the defendant, made her will, which, after bequests of legacies
to certain relatives named amounting to $1,300, contained the
following provision: "I further give and bequeath to my be-
loved husband all the ready money I may have, either in bank
or elsewhere, at my decease, before any of the foregoing lega-
cies or bequests shall be paid," and the remainder of her estate
she bequeathed to certain missionary societies for charitable
purposes.   She died on the 26th day of September, 1881, and
in October thereafter her will was admitted to probate and the
plaintiff qualified as executor.

In the year 1878 Mrs. Burch, as a legatee under the will of
Jane Stevenson, became entitled to a legacy of $450, and one
McChair was executor of that will, and had funds as such with
which to pay the legacy.   But there was delay on his part in
making the payment to Mrs. Burch by reason of his financial
embarrassment.   In the early part of the year 1879 Mrs.
Burch gave her husband instructions to collect the legacy from
McChair for her.   Between the 14th day of January, 1880,

and the 8th day of December of the same year, he collected the legacy from McChair for his wife, and the sum collected amounted to $490.25. For some time prior to the 1st day of January, 1880, and up to the time of her death, Mrs. Burch was incompetent to transact her ordinary business and unfit to exercise any control over her property by reason of severe bodily and mental infirmities and unsoundness of mind. As fast as the money was collected by the defendant from Stevenson, between the 14th day of January, 1880, and the 8th day of December of the same year, he used it with his own money in defraying his household expenses, and in procuring nurses and medical attendance for his sick wife, so that at her death no portion of the money received by him from McChair was on hand. During the time he thus expended the money he was able to provide suitably for his family out of his own property.

Upon these facts agreed upon for submission to the General Term, the plaintiff claims that the defendant is not entitled, under the will of his wife, to retain the sum of money collected by him of Stevenson, but that he owes this money to the estate of his wife, and he claims to recover that sum of him, with interest. On the other hand the defendant claims that he is entitled to the money received by him from Stevenson under the clause of the will above set out.

The facts stated are meager, and it would seem that other facts must have existed which would have enabled the court with greater certainty to arrive at the intention of the testatrix.

The meaning of the words "money" and "ready money," when used in a will, depends upon the context, and also to some extent upon the condition of the testator's property and the circumstances surrounding his estate; and in construing them, therefore, the courts seek for light in all the provisions of the will and in all the circumstances surrounding the testator and his estate, and it is their aim to give effect to the intention of the testator when that can be ascertained. The word "money" has sometimes been held to include securities, stocks, personal property, money in bank and money in the hands of

agents, when the context and all the circumstances which were rightfully considered indicated such to be the intention of the testator. In 2 Williams' Law of Executors (7th ed.), 1188, it is said : " Where a testator gives to one person ' all his moneys in hand' and to another 'all his moneys out on securities' the balance at his bankers will pass as money in hand. Under a bequest of all the testator's ' money ' in his house at A., bank notes and ready money will alone pass, although he may leave in it mortgages, bonds or receipts for government annuities. Where the testator bequeathed all his 'money ' in the Bank of England, and never had any cash in the bank, but was entitled to some three per cents and five per cents, bank annuities, Sir Willliam Grant, M. R., held that the stock passed. But though upon the whole context of the will stock may pass by the term ' money ' yet ' money ' does not, by the force of the word, include stock." In 2 Redfield on Wills, 129, it is said : " The word ' money ' in a will means that and nothing else, but when used with other words it may have much greater extension." In Wigram on Wills (O'Hare's ed.), 69, the author says : " The term ' *money* ' in America would doubtless pass all debts and annuities, stocks and securities belonging to the testator. The phrase 'ready money ' is perhaps usually differ- ent in meaning." In Roper on Legacies, it is said that " the word ' money ' unaided by the context, will include cash, bank notes, money at the bankers, notes payable to bearer, exchequer bills, and bills of exchange indorsed in blank, because they, as before observed, are not to be considered as choses in action, but money of the persons in whose possession they are. But choses in action, promissory notes not payable to bearer, government stock, long annuities and Columbian bonds will not pass under the word ' money.' " In the *Estate of Thomas Miller* (48 Cal. 165 ; 17 Am. Rep. 422), the court held that the word " money " used in making a devise in a will will be construed to include both personal and real property, if it appears from the context and on the face of the instrument that such was the intention of the testator. In *Manning* v. *Purcell* (7 DeG., M. & G. 55), it was held that under a bequest

of " all my moneys," money due on deposit notes, at the testator's bankers, as well as on the balance of his current account, and also money in the hands of a stakeholder on a bet, would pass. In *Parker* v. *Marchant* (19 Eng. Ch. 355), it was held that a testator's balance at his bankers would pass under the words " ready money." In *Fryer* v. *Rankin* (11 Simons, 55), there was a bequest in the following words: " I give and bequeath unto my dear wife Susannah Fryer, all my ready money at my bankers, in my dwelling-house or elsewhere; by which I mean money not invested in security or otherwise bearing interest, but which I may have in hand for current income and expenses, at the time of my decease; " and it was held that cash balances in the hands of the testator's bankers and of his agent, and dividends of stock due at the testator's death, passed by the bequest, but that the rent of a house and the interest of a sum due on mortgage did not pass. In *Byrom* v. *Brandreth* (Law Rep., 16 Eq. 475), there was a bequest of " any money of which I may die possessed," and it was held to include cash in the house and money at the bankers, and any money of which, at the time of her death, she might have claimed immediate payment; but not the apportioned part of an annuity, or of interest payable to her which had accrued from the last stated days of payment to her death, nor a legacy due to her which had not been acknowledged as at her disposal. In *Waite* v. *Combes* (5 De G. & S. 676), it was held that the word " moneys " must be taken to include stock in the funds. The vice-chancellor said: " There is no doubt upon the authorities that the word ' moneys ' may pass stock in the funds, it being a question of construction upon the whole will whether the testator meant to use the word in that sense or not." In *Beck* v. *McGillis* (9 Barb. 35) it was held that under a bequest of " all moneys " that the testator should die possessed of, the legatee was entitled to the cash, using the term in its proper sense, which the testator at the time of his death had in his possession, or deposited in bank, and to nothing else. In *Mann* v. *The Executors of Mann* (1 Johns. Ch. 231) it was held, that where the testator bequeathed to his

wife all the rest, residue and remainder of the moneys belonging to his estate at the time of his decease, the word "moneys" must be understood, in its legal and popular sense, to mean gold or silver, or the lawful currency of the country, or bank notes, where they are known and used in the market as cash, or money deposited in bank for safe-keeping; and not to comprehend promissory notes, bonds and mortgages, or other securities, there being nothing in the will itself to show that the testator intended to use the word in that extended sense.

We have made these citations at some length to show what scope has been given to these words, and how differently they have been construed by the courts and text writers. We cannot perceive that they have received different construction in this country from that which they have received in England. Ordinarily, standing alone, they have been held to mean only that which passes current as money, including also bank deposits. But when read with the context they may be held to mean any kind of personal property, and it is the office of the courts, considering every thing which may properly be resorted to for aid, in every case to give effect to the intention of the testator in their use.

The money here in controversy was received by the defendant from McChair as the agent of his wife. After he received it, it could fairly be treated as "ready money" in his hands for her. At the time he received it she had become imbecile and incompetent to do business, and therefore it remained in his hands as a depositary. He used it, subject, however, to his liability to account for it and pay it over whenever lawful demand should be made upon him for it. It was not money invested in securities, or out upon interest; but it was like money in bank liable to be paid upon call, and held by him as a simple depositary. She regarded money in bank, for which the bank was simply her debtor, liable to pay her upon proper demand, as ready money; and when she spoke of money, "either in bank or elsewhere," she meant all her money that was situated similarly to that which she had in bank. She evidently did not use the words "ready money" in their

limited sense, and she did not probably mean besides the money deposited in bank simply money kept on hand by her in her house or upon her person; but she meant ready money in bank or anywhere else. Money in the possession of her husband occupying the same house with her, which was at all times subject to call, could with some propriety be called ready money.

While we do not deem this case entirely free from doubt, we think the husband should, under the circumstances, have the benefit of the doubt, and that the bequest should have effect upon the money in his hands.

The judgment of the General Term should, therefore, be reversed and judgment given for the defendant, with costs.

All concur, except FINCH, J., who took no part.

Judgment accordingly.