**Bonnie Belle SELDER et al., Appellants,**

**v.**

**Estelle STEWART et al., Appellees.**

**No. 17501.**

Court of Civil Appeals of Texas, Dallas.

Dec. 4, 1970.

Rehearing Denied Dec. 31, 1970.

---

Richard S. Stark, Stark & Barnhart, Gainesville, W. R. Allen, Jr., Allen & Russell, Garland, for appellants.

Wm. Andress, Jr., Andress & Woodgate, Dallas, for appellees.

DIXON, Chief Justice.

Our former opinion in this case is withdrawn and the following is substituted:

This is a suit to construe the will of Thelma Evelyn Boyd, deceased. She died on December 27, 1966, leaving a will dated May 2, 1963.*

---

* The will in its entirety is as follows:
                    "State of Texas
                    County of Dallas
    Know all men by these present that I, Thelma Evelyn Boyd, of the County of Dallas, State of Texas, being of sound and disposing mind and memory, do make this my last will and testament, hereby revolking [sic] all wills by me at anytime heretofore made.
    I My one-fourth interest in the homestead and furnishings located at 624 N. Vernon Ave., Dallas, Texas, including two adjoining lots of 50 feet each, facing Fouraker St., 700 blk., to my sister, Genevieve Boyd Stewart.
    Also to my sister, Seth Thomas eight-day banjo clock.

    Electric coffee urn set with tray, cream and sugar, Community plate
    Diamond solitaire platinum ring with bow-knot of small diamonds on each side of center stone.
    One-half of coin collection.
    $25,000.
    II If there is any cash, after expenses and debts are paid, I leave to my aunt, Estelle Stewart.
    To my Aunt, Estelle Stewart, the duplex, formerly numbered 517–519 E. 13th, now 731–733 So. R. L. Thornton Freeway, including furnishings, except those willed otherwise, or any my sister might want.
    One-half of coin collection.
    $10,000.

The action was brought by Bonnie Belle Selder, Hattie Marie Burrows, Sam R. Boyd, Wayne Russell Boyd and Abraham Lincoln Boyd, half sisters and half brothers of the deceased. They are appellants here. The deceased's sister Genevieve Stewart was also a party plaintiff in the trial court, but she is not a party to this appeal.

The defendants in the trial court were Estelle Stewart, an aunt of the deceased, and Annie Laura Howard, who were sued individually and as independent executrices of the estate of the deceased.

The court's judgment awarded to Genevieve Stewart all of the title of testatrix at the time of her death to the real property known as 624 North Vernon Street in the City of Dallas; to Estelle Stewart individually all of the right to title and interest of testatrix at the time of her death in stocks, bonds, securities, deposits, choses in action, and other similar personal property readily convertible into cash; to Genevieve Stewart an undivided two-sevenths of the title to Lot 20, Block 7 of Mountain View Lake Addition to the City of Grand Prairie, Texas; and to Bonnie Belle Selder, Hattie Marie Burrows, Sam R. Boyd, Wayne Russell Boyd and Abraham Lincoln Boyd, each an undivided one-seventh interest in said Lot 20, Block 7.

It will be observed that testatrix by the terms of her will executed in May 1963

III To my aunt, Mabel Stewart Renfro, $2,000.
IV To Ila Dewey Mandeville, Normandie pattern flat sterling, service for eight. $1,000.
V To Annie Laurie Howard, the small H. O. Kelly, unframed oil painting. $1,000.
VI To Teddy Jeanning Adcock Gardner, $5,000.
VII To Amy Rosson, Movie camera and equipment. $1,000.
VIII To Imogene Pearce Johnson, $1,000.
IX To Adele Gladson Massey, $1,000.
I appoint Annie Laura Howard and Estelle Stewart independent co-execu-

specifically gave to her sister her one-fourth interest in the property known as 624 North Vernon. But the court's judgment awarded to the sister the full one-half interest in the property owned by testatrix at the time of her death.

It will also be noticed that the testatrix died partially intestate. Lot 20, Block 7 of Mountain View Lake Addition in the City of Grand Prairie was not mentioned or in any way disposed of in her will. In the court's judgment this real property was awarded to the full sister and half sisters and half brothers as heirs at law of testatrix in accordance with the laws of descent and distribution. Appellees made no objection to this part of the judgment.

The court's judgment recited that "it was the intention of the testatrix to make as complete a disposition as possible of her assets to her beneficiaries named in her will, and that it was her intention to leave her interest in the family homestead on North Vernon Avenue to her full sister Genevieve Stewart, and to leave all of her stocks, bonds, securities, deposits, and other choses in action convertible into cash to her aunt, Estelle Stewart, after the payment of other obligations under the will; * * *."

## FACTS

The meaning and effect of the first sentence of the section numbered I and also

trixes and direct no action be had in the County Court, other than to probate this will and file inventory of my estate and list of claims.

In testimony whereof I have hereunto set my hand this the 2 day of May, 1963.
/s/ Thelma Evelyn Boyd

Signed by Thelma Evelyn Boyd as her last will and testament in the presents [sic] of us, the attesting witnesses, who have hereunto subscribed our names in the presence of said Thelma Evelyn Boyd at her special instance and request and in the presence of each other this the 2 day of May, 1963.
/s/ Myrtle Matthews Payne
/s/ Lena McDonald Lokey"

the meaning and effect of the first sentence of the section numbered II of the will are the subjects of this controversy—especially the meaning and effect of the first sentence of paragraph II.

Most of the material facts in the case are established by stipulations of the parties, or the undisputed testimony.

The father of the testatrix was Julius Arthur Boyd and her mother was Vaida Boyd, both of whom died some years ago. Two children were born of their marriage, the testatrix Thelma Evelyn Boyd and her sister, Genevieve Stewart, nee Boyd.

Both of the parents of the testatrix were divorced many years ago and both remarried. Three sons and two daughters were born of the second marriage of Julius Arthur Boyd. They are the half sisters and half brothers of testatrix who are the appellants in this appeal. Their ages at the time of the trial ranged from fifty-five years to thirty-seven years.

Vaida Boyd, the mother of testatrix, subsequently married Whitney M. Montgomery. No children were born of this marriage.

The testatrix herself was married once but divorced her husband in 1948 and her maiden name, Thelma Evelyn Boyd, was restored. No children were born of her marriage.

Following his divorce from the mother of testatrix Julius Arthur Boyd moved from Dallas. The record does not indicate that he made any effort to communicate with his two daughters by his first marriage.

Over the years there was little communication between the testatrix and her half brothers and half sisters. Three of them had never seen her. Two of them had seen her once and had telephoned her once. Some of them did not know where she lived, what she did for a living, or that she had been married and divorced.

The mother of testatrix, Vaida Montgomery, died in 1959. The testatrix and her sister, Genevieve Stewart, thereupon inherited their mother's half of the community estate of their mother and her second husband, Whitney M. Montgomery. However the two sisters left their interest undistributed and in the possession of their stepfather.

Whitney M. Montgomery, the stepfather, died in 1966 leaving an estate of approximately $110,000 of his own together with his deceased wife's (the mother of testatrix) community interest of an equal value, $110,000. Testatrix and her sister each then came into possession of their mother's community property of an approximate value of $55,000, consisting of stocks and bonds and the homestead of her mother and stepfather.

By his will the stepfather of testatrix left his property to the testatrix and her sister Genevieve Stewart. Thus each of the two sisters was left another one-fourth interest in the community estate of their mother and stepfather. Thelma Evelyn Boyd was named as independent executrix in the will of her stepfather, Whitney M. Montgomery.

However the death of testatrix on December 27, 1966 occurred about one month after that of her stepfather. The testatrix had applied for probate of her stepfather's will, but her own death intervened before the will was admitted to probate. Thereafter, Genevieve Stewart was appointed administratrix.

At the time of his death the gross estate of Whitney M. Montgomery, stepfather of Thelma Evelyn Boyd, was valued at $109,869.79 as shown by the inventory and appraisement on file. Of said amount $6,500 consisted of his one-half community interest in real estate; $103,369.79 consisted of his one-half community interest in personal property—the latter made up chiefly of stocks and bonds.

At the time of her death the gross estate of the testatrix Thelma Evelyn Boyd was valued at $149,804.22, as shown by the inventory and appraisement on file. Of said amount $18,650 consisted of real property; $131,154.22 consisted of personal property.

Under the terms of the will of the stepfather the testatrix Thelma Evelyn Boyd and her sister were made his beneficiaries. This means that the testatrix in November 1966 received more than $50,000 worth of personal property from his estate—chiefly consisting of stocks and bonds.

## OPINION

Appellants contend that the court erred in three particulars:

1. In construing the will to bequeath all right, title and interest of the decedent as they existed at the time of her death in stocks, bonds, securities, deposits, choses in action and other similar property readily convertible into cash.

2. In construing the will to bequeath to her sister, Genevieve Boyd Stewart, all the title of the decedent which vested in her at the time of her death in the real property known as 624 North Vernon Street in the City of Dallas.

3. In failing to construe the will to leave the rest, residue and remainder of decedent's property to her heirs at law under the laws of descent and distribution after providing for the payment of the nine specific bequests of cash, real property and property of a personal nature as set by the testatrix in her will, "or, in other words, failure to find that the decedent died partially intestate."

Appellees seek to uphold the court's judgment on the grounds that in order to ascertain the true intention of the testatrix we should consider the circumstances surrounding the testatrix at the time she made her will. And if we do that we must construe the word "cash" as used in the first sentence in its more comprehensive and general sense to mean property and wealth of all kinds, especially property readily convertible into money, such as stocks, bonds, etc. Appellees further rely on the general presumption that a testator, by making a will, shows his intention not to die partially intestate, and that such presumption is applicable in this case in order to avoid partial intestacy.

A cardinal rule in the construction of wills is that courts will seek to ascertain the intention of the testator if that can reasonably be done. 61 Tex.Jur.2d 265. If the will is ambiguous courts may look to extraneous circumstances in order to ascertain the intention of the testator. Haile v. Holtzclaw, 414 S.W.2d 916, 922 (Tex.Sup.1967); Guilliams v. Koonsman, 154 Tex. 401, 279 S.W.2d 579 (1955). But if the will is unambiguous the testator's intention must be ascertained from the language used within the will itself, without reference to extraneous circumstances. Foy et al. v. Clemmons et al., 365 S.W.2d 384 (Tex.Civ.App., Dallas 1963, writ ref'd n.r.e.); see 61 Tex.Jur.2d 246, 269–270, 274–275.

We think the will here under consideration is not ambiguous. Therefore we must ascertain the testator's intention from the language of the instrument itself. And when we do that we are convinced that the testatrix did not use the word "cash" in its broad, flexible sense to include property of all kinds, as contended by appellees. Foy v. Clemmons, supra; Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779, 790–791 (1951); 61 Tex.Jur.2d 246. In Paul v. Ball, 31 Tex. 10 (1868) the court construed the word "money" to include the whole of the testator's personal estate. But the basic facts in Paul v. Ball may easily be differentiated from the facts here. Moreover, in Paul v. Ball, the court states the rule which, though it was held not to be applicable there, is in our opinion applicable here:

"In construing this will, in reference to this term used in the residuary clause,

we must ascertain from the general context of the will whether the testator used it in its restricted or in a more comprehensive sense. If it be palpable from the context of the will that it was his purpose to use it in its restricted sense, then, this being the intention of the testator, we should feel constrained so to declare, though partial intestacy should be the consequence."

Our Supreme Court in Kettler v. Atkinson, 383 S.W.2d 557, 561 (1964), makes this statement:

"This court is not disposed to rewrite the will of the testatrix, Mrs. Atkinson, and thereby create ambiguities. We decline to resort to the substitution of words for the words of the testatrix to accomplish such purpose. In ascertaining the intention of the testatrix, we must give effect to the words selected by her. Salvation Army of Texas v. Ford et al., Tex.Civ.App., 256 S.W.2d 953 (1953) no writ history. The intention of the testatrix so far as the ranch property is concerned is clearly expressed, therefore, we do not get to the rule which authorized the Court to adopt a construction of a will which will avert intestacy."

See also McCulloch v. McCulloch, 232 Ark. 413, 337 S.W.2d 870 (1960); In re Svendsen's Will, 191 Misc. 932, 77 N.Y.S.2d 893 (N.Y.1947); Christ's Home v. Mattson, 140 N.J.Eq. 433, 55 A.2d 14 (N.J.1947); In re Chamberlain's Estate, 56 Cal.App.2d 458, 132 P.2d 488 (Cal.1942); Board of Missions of M. E. Church South v. Brotherton, 178 Va. 155, 16 S.E.2d 363 (Va. 1941); In re Rogers' Estate, 91 N.J.Eq. 294, 109 A. 16 (N.J.1920).

Here the word selected by the testatrix was "cash". She did not select the word "money" (as was done in Paul v. Ball, 31 Tex. 10—1868) or the word "stocks", or "bonds", or "certificates of deposit", etc.

There is nothing in the record to indicate that when the testatrix executed her will on May 2, 1963 she had in mind whatever stocks, bonds or securities easily convertible into cash she was entitled to as her share of her mother's part of her community estate; or that she anticipated that she would inherit more than $50,000 in stocks, bonds, etc. from her stepfather's estate.

■ It is true that our courts under proper circumstances will take notice of the presumption that a testator will not ordinarily intend to die partially intestate. But the presumption is rebuttable and cannot prevail over the unambiguous language of the will. Alexander v. Botsford, 439 S. W.2d 414, 416 (Tex.Civ.App., Dallas 1969, writ ref'd n.r.e.); Carr, Attorney General v. Rogers, 383 S.W.2d 383 (Tex.Sup. 1964); Kettler v. Atkinson, 383 S.W.2d 557, 561 (Tex.Sup.1964) hereinbefore quoted; Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779, 790 (1951).

■ There is another reason why the presumption is not applicable here. As we earlier stated, the testatrix did in fact die partially intestate, as appellees themselves admit. The real property known as Lot 20, Block 7 of Mountain View Lake Addition in Grand Prairie was not mentioned in the will. The court properly and without objection from appellees awarded this property to the legal heirs of the testatrix pursuant to the laws of descent and distribution.

We sustain appellants' three points of error.

The judgment is affirmed insofar as it awards Lot 20, Block 7 of Mountain View Lake Addition in Grand Prairie, Texas, to the heirs at law of the testatrix Thelma Evelyn Boyd.

The judgment will also be affirmed insofar as it complies with the bequests and devises to named persons expressly and explicitly describing the property so given.

But the judgment will be reversed as to all property not expressly and specifically described in the above bequests and devis-

es; and judgment is here rendered that said property, that is the residual estate of the testatrix, shall go to the lawful heirs of the testatrix in accordance with the laws of descent and distribution as follows: two-sevenths of said property to Genevieve Boyd Stewart, the full sister of the testatrix, and one-seventh to each of the half brothers and half sisters.

Affirmed in part and reversed and rendered in part.